UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOMAS STEVENS, and<br>SUZANNE STEVENS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>THE CITY OF SOUTH BEND,<br>INDIANA, AARON KNEPPER, and<br>JEFFREY RANSBERGER,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　　No. 3:15 CV 143<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment. (DE # 21.) For the reasons that follow, defendants' motion is granted, in part, and denied, in part.

## I.　BACKGROUND

The incident in question began on March 25, 2014, when Officer Aaron Knepper, an officer with the South Bend Police Department and a defendant in this case, attempted to pull over plaintiff Thomas Stevens[1] for a traffic infraction. Thomas claims that once he saw the lights, he made a left turn (DE # 23-1 at 1) and continued driving a "short distance" to his home. (DE # 23 at 4.) He exited the vehicle and told Officer Knepper that he lived at the residence and was going inside. (DE # 23-1 at 1.)

---

[1] Because both plaintiffs have the same last name, they are referred to by their first names in this opinion.

After that, according to Thomas, Officer Knepper began screaming commands at Thomas; first to get back in his vehicle, then to get on the ground, and then to put his hands in the air. (DE # 23-1 at 1-2.) Thomas did not abide by any of the commands. Instead he asked: "[F]or what?" (*Id.* at 2.) Officer Knepper then threatened Thomas with the use of a taser. (*Id.*) Thomas "decided to go inside my home." (*Id.*) At that point, Officer Knepper employed the taser. (*Id.*) Afterwards, Thomas stated that he "continued towards the house." (*Id.*) As he did so, Officer Knepper began striking him. (*Id.*) Officer Knepper claims that he and Thomas "struggled, exchanging blows" (DE # 22-1 at 2), though Thomas claims he never struck or attempted to strike Officer Knepper (DE # 23-1 at 2).

Then, according to Thomas's version of the events, Thomas's mother, Suzanne, came out of the house and told Officer Knepper to stop hitting Thomas. (DE # 23-3 at 2.) Next, Suzanne grabbed Officer Knepper's arm and hit him on the back. (*Id.* at 1; DE # 23 at 5.) Officer Knepper knocked Suzanne to the ground. (DE # 23-3 at 2.) Officer Knepper then entered the home and continued to repeatedly punch and choke Thomas on the steps leading into the kitchen. (*Id.* at 2.)

Officer Jeffrey Ransberger, another defendant in this case, then arrived at the scene. Suzanne maintains that she again "tried to stop" Officer Knepper, and that Officer Ransberger grabbed her and caused her to fall to the ground and strike her head. (*Id.* at 2.) According to Thomas, Officer Ransberger then pulled Thomas out of

2

the house, and drove Thomas's head down onto the concrete driveway. (DE # 23-1 at 2.)

Thomas was arrested and transported to a hospital. (*Id.* at 3.) Thomas suffered brain injuries; doctors induced a coma and placed Thomas on a ventilator, and he spent several days in the hospital. (*Id.* at 2.) Suzanne claims she suffered bruising and a cut to the head. (DE # 23-3 at 2.)

Thomas and Suzanne filed the present lawsuit against Officers Knepper and Ransberger, as well as the City of South Bend. (DE ## 2, 10.) The suit alleged the use of excessive force by the officers in violation of the Fourth Amendment under 42 U.S.C. § 1983, as well as other claims, including a claim against the City under *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1987). (DE ## 2, 10.)

Defendants moved for summary judgment, articulating defenses to all of the claims raised (DE # 21), but plaintiffs responded by arguing the validity of their excessive force claims against the officers, only. (DE # 23.) Thus, the court deems abandoned all of plaintiffs' claims other than their § 1983 claim under the Fourth Amendment. *Palmer v. Marion County,* 327 F.3d 588, 597–98 (7th Cir. 2003) (claim not addressed in response to summary judgment motion is deemed abandoned).

II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing

3

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer,* 327 F.3d at 595. In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

  The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

## III. DISCUSSION

At the outset, the court notes that Officers Knepper and Ransberger have raised the defense of qualified immunity. Qualified immunity shields an officer from a suit for damages if a reasonable officer could have believed his or her action to be lawful, in light of clearly established law and the information the officer possessed. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

The court conducts a two-step inquiry when evaluating a qualified immunity claim: "First the court must determine whether the disputed conduct, as alleged, violates a constitutional right; second, the court must determine whether that right was 'clearly established' at the time of the alleged conduct." *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005). Accordingly, the court first must determine whether the officers violated any of plaintiffs' constitutional rights during their interaction.

In the context of excessive force claims, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. *Graham v. Connor,* 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner,* 471 U.S. 1, 8–9 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that

are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Factors to consider in making a determination of whether the amount of force used to effectuate a seizure is reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. *Estate of Escobedo v. Bender,* 600 F.3d 770, 780 (7th Cir. 2010). The court should also consider whether the suspect was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir. 2000).

    A.    *Thomas's Claims*

Officer Knepper's first use of force was the deployment of a taser. It is undisputed that Officer Knepper's initial action against Thomas was not in response to any violent or physical aggression on Thomas's part. Yet, the Seventh Circuit has held that failing to follow commands is not "active resistance" and does not constitute the type of struggle that warrants significant use of force. *Phillips v. Cmty. Ins. Corp.,* 678 F.3d 513, 528–29 (7th Cir. 2012) (unreasonable for officers to repeatedly use an impact weapon to beat into submission a person who was merely passively resisting officers' orders); *Abbott v. Sangamon Cty., Ill.,* 705 F.3d 706, 732 (7th Cir. 2013) (law was well-established that police officers could not use significant force on nonresisting or

passively resisting suspects); *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir. 1996) ("It is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."); *see also Harris v. Clark,* No. 06-C-529, 2008 WL 4866680, at *5 (E.D. Wis. Nov. 10, 2008) (question of fact existed as to whether officers intentionally threw suspect headfirst into a wall when suspect had not attempted to use physical force against the officers, preventing summary judgment on qualified immunity).

In *Cyrus v. Town of Mukwonago,* 624 F.3d 856, 863 (7th Cir. 2010), an unarmed individual ignored a request by an officer to come to a squad car to talk, and instead turned and began moving toward a residence. *Id.* at 858. The officer fired his taser, which made the individual fall to the ground. The individual attempted to stand up but fell down; the officer fired his taser a second time. The individual rolled down a driveway and did not comply with commands to produce his hands for handcuffing, and was tased an additional number of times. The court concluded that, because the individual was not exhibiting violent behavior, did not violently resist, was unarmed, and had a mental illness, a jury could conclude that the use of force was unreasonable. *Id.*

*Cyrus* is different than the case at hand in the sense that the individual involved in *Cyrus* suffered from a mental illness, and there is no evidence that similar circumstances exist in this case. Nevertheless, this case also involves an unarmed, non-

7

violent individual who was pursued by an officer for a non-violent offense, who ignored officer commands and instead attempted to enter a residence. The court finds it persuasive that the *Cyrus* court concluded that a jury could decide that taser use in that case was unreasonable. Officer Knepper's taser use in this case also could be construed as unreasonable by a finder of fact. Of course, a fact-finder could also find Officer Knepper's decision to be reasonable, but the court cannot decide the issue as a matter of law.

Similarly, significant factual questions must be resolved in order to determine whether Officer Knepper acted reasonably in administering "blows" on Thomas during the incident. (DE # 22-1 at 2.) The frequency and severity of the "blows" must be determined. *Cyrus,* 624 F.3d at 863 ("Force also becomes increasingly severe the more often it is used; striking a resisting suspect once is not the same as striking him ten times."). Thomas's level and type of resistance also must be resolved. *Chelios v. Heavener,* 520 F.3d 678, 692 (7th Cir. 2008) (summary judgment on grounds of qualified immunity not appropriate where facts were disputed regarding what degree suspect had become agitated and threatening in speaking to officer and whether suspect had made any physical contact with officer). The words of the court in *Blackmon v. Regis,* No. 95 C 4559, 1996 WL 660650, at *3 (N.D. Ill. Nov. 12, 1996) ring true here:

> Blackmon claims that he did not resist arrest, that the police gratuitously threw him to the ground and struck him in the head after he was incapacitated. If this version of events is true, Blackmon has a claim. The defendants claim, on the other hand, that Blackmon resisted arrest and that

8

> their actions were proportionate to his resistance. If this version of events is true, defendants deserve to prevail. But we have no way of determining which version of events is true at this point in the litigation.

*See also Torres v. City of Chicago,* No. 12 C 7844, 2014 WL 7339607, at *4 (N.D. Ill. Dec. 19, 2014) ("Was the force 'minimal'? What was Correa doing immediately before Pena, to use the defendants' description, punched her in the face to subdue her? Was it necessary to 'subdue' Correa? These fact questions mean that Pena is not entitled to qualified immunity and the defendants' motion for summary judgment as to Count II is denied.").

Officer Ransberger, however, is entitled to qualified immunity with respect to Thomas's claims. The Seventh Circuit's decision in *Smith v. Ball State University,* 295 F.3d 763, 770-71 (7th Cir. 2002), is instructive. In that case, a backup officer arrived on the scene in the midst of an ongoing struggle between other officers and a suspect. The Seventh Circuit held that the backup officer was reasonable in his belief that two other officers were engaged in a struggle with a suspect and required assistance. *Id.* Though the suspect maintained that he was not actively resisting when the backup officer arrived, the Seventh Circuit emphasized that it must evaluate the backup officer's use of force not with the benefit of hindsight, but rather as it appeared to the officer at the time of the encounter. *Id.* The court concluded that the backup officer's attempt to apply a knee strike to the suspect, to aid his fellow officers, did not violate the Fourth Amendment. *Id.*

9

According to Thomas's version of the facts, Thomas was still being beaten by Officer Knepper when Officer Ransberger arrived, but was not hitting back. Officer Ransberger grabbed Thomas from behind, ultimately driving him head first onto a concrete driveway. Though Thomas may be truthful in his assertion that he was not actively resisting, it was reasonable for Officer Ransberger, who was called in as backup in this situation, to see Officer Knepper struggling or fighting with Thomas and feel the need to act quickly and decisively to assist his fellow officer. That Officer Ransberger reacted with a pronounced physical intervention by extracting Thomas from the scuffle with Officer Knepper and slamming Thomas on the driveway was reasonable under the particular circumstances of this case. Like the backup officer in *Smith*, Officer Ransberger is entitled to qualified immunity with respect to Thomas's claim.

  B.  *Suzanne's Claims*

According to Suzanne's version of the facts, after Suzanne saw Officer Knepper deploy a taser on Thomas, she grabbed Officer Knepper's arm and hit him on the back. At that point, Officer Knepper knocked her to the ground. When Officer Knepper began punching Thomas repeatedly, she intervened again. Suzanne maintains that she was injured when she was removed from the situation by Officer Ransberger, who grabbed her and caused her to fall to the ground and strike her head.

The undisputed facts demonstrate that Suzanne was physically and purposefully interfering with Officer Knepper's attempt to execute his duties. *Jacobs,* 215 F.3d at 773. Further, it may not have been clear how much of a threat Suzanne posed, in the split-second when she emerged on the scene. The addition of Suzanne into the scenario increased the risk to Officer Knepper, as at that point he was outnumbered. Officer Knepper's act of knocking Suzanne to the ground as he struggled with Thomas was not unreasonable. Nor was Officer Ransberger's decision to intervene by grabbing Suzanne and throwing her to the ground. *Dawson v. Brown,* 803 F.3d 829, 834 (7th Cir. 2015) (officer reasonably tackled suspect's father when he approached fellow officer who was in a "dangerous position due to his inability to subdue [the son,] a non-compliant subject").

Because there is no genuine issue of material fact regarding the existence of a constitutional violation by the officers against Suzanne, there is no need to proceed to the second step of the qualified immunity analysis. *Billings v. Madison Metro. Sch. Dist.,* 259 F.3d 807, 816 (7th Cir. 2001). Officers Knepper and Ransberger are entitled to qualified immunity for Suzanne's claims.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 21) is **GRANTED, in part, and DENIED, in part.** Because claims remain pending in this case, the court withholds entry of final judgment.

**SO ORDERED.**

Date: August 15, 2017

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT